Good morning. This is work. Testing. Testing 1, 2, 3. I hope no one here has been confounded by the switch of some cases between courtroom 203 and this courtroom known as 201. The panel has before it a total of five cases, two of which are being submitted on the briefs without oral argument today. They are appeal number 06-5080 Odua v. United States and appeal number 06-3239 Frisbee v. Office of Personnel Management. On the three-case argument list, we'll hear argument first in appeal number 05-1481 Motorvac Tech v. Norco Industries. Good morning. Welcome and please proceed. Good morning, Your Honors. Rita Gunasekaran on behalf of Motorvac Technologies. The determination of this appeal is not dependent upon interpreting, solving or applying a complex mathematical formula or an abstract or esoteric scientific theory. Instead, it is dependent upon the core principle of patent law itself, the claims. These claims are creatures of statute. We know all that, Counsel. What we need your help on most, I think, is if there was reversible error committed by the trial court, exactly where and why. Your Honor, the reversible error is, I submit, based on the trial court's extrapolating and adding words to the claims that are not present in these claims by turning to the specification. As Your Honor is aware, more than enough... I didn't see where any words were added. I'm not sure what you mean that the district court added words to the claim. Your Honor, the words of this claim specifically says that the phrase that we are disputing over is intercepting one of said conduits to interconnect the upstream side with the used fluid receptacle. We've read the brief and we've read patent 160, so we know what you're talking about in general. All right. And the district court initially construed intercepting as dividing a conduit. And then slightly changed it later. But what does that have to do with adding words to the patent? I thought what the district court did, as requested by the parties, was to provide a definition in this patent for the word conduit. But you're saying he added words. It looked to me like he didn't add any words. He merely defined what conduit in this particular patent means. Which would seem to be perfectly proper. So where's the error? I'm not following you. Your Honor, the patentee himself defined a conduit as a hose or a pipe to connect or transmit fluid from the transmission to the radiator. That was his definition of the word conduit. The district court, on the other hand, defined a conduit not just the hose or pipe to convey the fluid between the transmission and radiator... Counsel, let me stop you. Because I don't see where the patentee defined conduit. In his testimony. At all. Yes, he did not define it. There's nothing in the specification to define any of the disputed terms. All the more reason why the court cannot add words that are not found there by saying... No question that you're correct. That in construing a claim, a court is not allowed to add words. But I still don't understand why you insist that he added words versus defined the single word conduit. He defined the single word conduit to include connections to the radiator and the transmission. Right. And I would submit that that is not... Why is that not entirely consistent with the written description? And that is where, Your Honor, I went back to the original words of the statute and the U.S. Supreme Court saying that a claim is not like a nose of wax to be twisted and turned by merely referring to the specification. There's nothing in the claim which says a conduit is anything more than the fluid conveyor. It does not include the transmission connectors or the radiator port or any of the other... But don't they convey fluid just as much as the hose or line portions? But when you intercept said conduit... You're not answering the question. We're talking about intercept. Don't the connections at the base of the radiator convey fluid just as much as the hoses or metallic lines that feed into those radiator connectors? Your Honor, throughout the automobile, the transmission radiator, all of these parts do convey fluids. The fluids circulate all through them. That's how the automobile functions. But when you talk to a person of ordinary skill in the art and say conduit, I don't think the person will immediately say, yes, it refers to the radiator, the transmission, all the other automobile parts. Did you have some testimony by some expert? I am referring to the testimony of Mr. Parker, who is the patentee for the 160 patent, and he testified that it is... Are you saying he proved your case for you? I think he proved it. The words of the claims proved it. That a conduit conveys a path. It is not the other parts of the automobile. It seems to me you're trying to equate the word conduit to the expression cooler line that was used in the written description. But to interpret the claim the way I understand you're suggesting would mean the claim would not read on the embodiment shown in figure two. And that's the basic premise of claim construction. You seldom offer to read claims so as to exclude preferred embodiments. It is true that that is the basic principle of claim construction, to exclude preferred embodiments. But you cannot take words from preferred embodiments when the claim itself describes an inoperable device. Well, it's not inoperable if the word conduit, which is used in the claim, it's not added to the claim, it's used in the claim, is simply defined in a way that is consistent with the written description and the entire presentation of the invention. Your Honor, if a conduit is interpreted to mean not just the fluid path or the conveyor that conveys the fluid, but all the other parts of the automobile, then it truly defies the imagination as to what can be stretched by judicial interpretation. But the district court didn't construe that expression to include all the parts of the automobile. The district court's construction was far more narrow and, as I read it, entirely consistent with the written description and includes the embodiments. Why is that wrong? Your Honor, the district court interpreted conduit to include connections to the transmission and radiator. It interpreted intercept to mean dividing or disconnecting, and it interpreted side, the side of the intercepted conduit, it can refer to a location relative to a portion of the conduit. I understand that. The problem I'm having is that I can't understand why that's wrong. Well, it is wrong because if you interpret the terms the way, just based on the claim, then the words cannot mean something other than the conveyor that conveys the fluid. Yes, I realize that I'm talking to a panel that clearly disagrees with my reading of the claim, and I don't think here you don't have a definition of the claim terms in the specification. What you have is the claim terms, and if they are interpreted as a person of ordinary skill in the art, it is a fluid pipe. Your Honor, you said earlier that Mr. Parker, the other side's witness, gave a construction of the claim from the perspective of an ordinary artisan, which helped your case. What specific testimony are you referring to? I'm referring to the joint appendix, tab 44, pages 231A and 231B. Where Parker said exactly what? He defined a conduit as a path from the transmission to the radiator. Okay. How does that contradict what the district judge ruled in his construction? If I say that my path, it describes the road that leads from the federal courts building to the White House, I don't think the person reading it will understand it to mean that the road includes the White House and the federal court building. I think a path is very different. A road or a path or a conduit is very different from the connectors to the transmission and the radiator. And the only way you can do that is if you take words from the specification. The legislature struck an equitable bargain in giving the patentee the right to exclude all others. The legislature insisted that the claims define the invention. Of course. We know the basics. Yeah, I'm aware you know the basics. Your Honor, I'm sorry, I'm getting a little impassioned. Well, look, if we agree with you about the error in claim construction, then you win on infringement. But you're now running very short of time. Are there any other issues that you want to take up? Yes, I would also submit that there was clear error in the best mode decision reached by the court. Now, when you say clear error, I'm a little bit confused what you mean. I'm saying that... I thought best mode was decided on summary judgment. No, it was decided on a judgment as a matter of law. I'm not saying that that's a clear error standard that applies to determining whether the judgment as a matter of law was granted. I'm saying there was clear error in the underlying factual determinations made by the court when Mr. Parker testified that he knew at the time he made the invention, the better mode of doing his, carrying out his invention. Well, the invention defined by the 160 patent was a system for changing the transmission fluid. It is... And the preferred embodiment would seem to be the best mode of such a system. Your Honor, the 160 patent itself says its purpose is specifically to provide transmission flusher apparatus adaptable for use with various vehicles and automatic transmissions. Yes. So, in order to be able to use it for various vehicles, when Mr. Parker was asked when he knew at the time he filed the patent application, the best mode to service multiple vehicles was to use adapter hoses, he said yes. And then... That depends on the size and shape of the radiator connections in a given vehicle. It may be that vehicles A, B, and C made by different makers have exactly the same size radiator connection, in which case the same hose, I'll call it, would fit all three, and therefore you would be servicing multiple vehicles made by different makers all with the same hose. Now, it may be that vehicle D has a different size connector, and for that one you might need a different size hose, but I don't follow your point. My point is I'm not an expert on this area. Mr. Parker is the patentee, and in his testimony, when he was asked if he could take his patented invention and use it for the purpose for which he claimed he got the patent, his answer was no, he couldn't. He found out that he had to use adapter hoses. His words are that he went and did the diligence. The invention is claimed is to be able to service various vehicles. Multiple vehicles. Yeah, multiple vehicles, but it doesn't say every possible vehicle. That is true, your honor. And therefore, if in my example several vehicles have the same size connectors, then without adapter hoses you can service those multiple vehicles, but maybe not every vehicle. So if he only claimed more than one vehicle, but not every vehicle, I don't see how we get into an issue of best mode about adapter hoses. Well, again, I respectfully disagree with your honor. When a patent says that it can be used for servicing multiple vehicles, and the patentee admits on the stand that no, you cannot use it for multiple vehicles. That's not what he said. He said you couldn't use it for every vehicle. You could use it for multiple vehicles. That's not my recollection of the testimony. Well, we'll look back at the testimony. Anything further? If you want to save your remaining time for rebuttal. I believe I have 50 seconds. I would just like to briefly touch upon, these are, of course, our main issues. But this is also your rebuttal time that you're using. Oh, then I will stop. Very well. Thank you. Mr. Schooley. Good morning, and welcome. And I suggest to you that since we have the full briefs by both parties, that we can confine the response argument to things argued here orally by counsel, and that you don't need to address things that she didn't argue orally but were in her brief. All right. I think I can do that, Your Honor. Claim construction, as Your Honor understood, the claims were construed to read on the best, on the mode disclosed. And there was expert testimony that that was a proper way to construe those claims. And the claims, within the claims themselves, of course, the terms call for the flow of the fluid from the transmission to the radiator and back again and so forth. And they define, claims define how those conduits and lines are intercepted to make it work so that the external pump can pump back in and the internal pump out. That's all there. And heavily briefed at trial in the claims properly construed in that regard, particularly as you read on the disclosed embodiment. If I understand counsel's argument, I think what she was trying to say was that the claim calls for a conduit, and a conduit is something different from the connections that are part of the things the conduit is attached to. And therefore, to read the claim using the words that appear would require that the conduit itself, the tube, the hose, be somehow severed or interrupted. It seems to me what she was trying to say is that the conduit should not be interpreted to include all the components. Sort of like the patent discloses where it is all the components. I think what she's saying is it's supposed to be considered a separate, just a tube, and you're supposed to take this tube out. I mean, that would not be a terribly unusual way to look at the word conduit. Yes, if it was not. Why is her point then not valid? Because the way it's described in the patent, and particularly in reference to Figure 2, it describes how these components work to transfer fluid back and forth, and it takes all of the things. And if you read, when you read the claim, the claim talks about how the components operate together. Here's Claim 1, where it calls for a method of replacing fluid, where the fluid is circling through a cooler, and so forth. And it talks about steps. And it talks about how these, intercepting one of the conduits, you divide into one of the conduits, which can be as disclosed in this patent and in the prior art, I believe, Viking, talks about you can intercept it anywhere along its line. And what's being pumped down that conduit is going to be the upstream, and what's on downstream is going to be the downstream. And that conduit has to extend all the way around in order to achieve what they're talking about in the claim. You like Mr. Parker's definition that it's a pathway as opposed to a line or hose. That seemed right, and that agrees with Professor Garrison's testimony. Now, if the conduit were properly construed only to mean the line or hose, and to exclude connectors and other parts of the pathway, wouldn't that mean that to do the intercepting, you'd have to chop the line? You'd have to cut the line? It would seem to be that you'd have to chop it in two places. That wouldn't seem very practical. It seems like you would want to use a part of the conduit that already has a natural end to it. Because if you, suppose we're talking about a metal line carrying this fluid, and if you had to sever it in order to do the intercepting, then you'd also have to weld it back together again, I guess, when you were done, wouldn't you? That would seem right, and of course in the patent they do talk about disconnecting at 19, and they show some couplings in figure 2. 19 is the connector to the base of the radiator. Right. And then they show these couplings for connecting back together, and then it's described so that that's how it operates and how it functions. And going to the last element of claim 1, it talks about causing an external pump, which is in the fluid flusher, to force fresh fluid from the source into the transmission via the intercepting conduit at a particular flow rate. So that describes the whole system in order to make this happen. Obviously if you just had a bare hose, that wouldn't happen. Now the array of variably sized hoses that Mr. Parker also developed was the subject of a later patent, right? That is correct, Your Honor, and the way that kind of, it did not, the issue of best mold, if that's what we're addressing here, that did not come up in pre-trial, did not come up in discovery, was not pre-tried, and there was no facts in the pre-trial statements. It just happened to be a one-word response to a question asked during trial. And that was of Mr. Parker, who was an auto mechanic, who came over that day to the courtroom and was waiting in the lobby, or actually arrived late, and the judge was a little testy with me about where's Mr. Parker, your first witness, and the judge had talked about the fact that 170, the 170 patent was not in the case before Mr. Parker came in. This is in the record. Then as I examined Mr. Parker, I mentioned the 170, and then we concluded that examination, and then he was examined on cross, and he was asked a question about the patent, not saying which patent or anything like that. Nothing about the 170, nothing about what components do you mean, nothing about is the adapters in the 170 patent you're talking about, or what is it you're talking about, so forth. And then after Mr. Parker had to go back to work, so he left the courtroom, and when Mr. Tallman came on the stand, the 170 was mentioned again, and the fact that it was not part of the case. So what counsel refers to in the brief as being clear that he was talking about the 160 is not so clear at all if you haven't been at trial. Okay, now if the witness intended to be addressing the 170 patent, then it's not legitimate for his answer to be used as an attempt to prove violation of the best mode requirement with regard to the 160 patent. So if you're correct that his answer should be understood to implicitly refer to 170, then certainly you have to win on that issue. But suppose that it's either viewed by us as ambiguous, or suppose even that we end up concluding that he was referring to the 160 patent. Is that fatal to you on best mode or not? No, it's not, because the prior art, both Viken and Bettencourt, earlier patents, refer to types of adapters for doing this same procedure, so it wasn't novel. Plus there was no testimony at all about when these adapters were developed, whether it was before or after the patent application was filed, what they were, the construction of them, whether they were just a component you buy over at Pep Boys that has an elbow or a coupling on it and so forth, what it actually was, and then if you look of course at the 170 patent, there's no claims directly to those adapters, those are just dependent claims. Does it matter that with respect to the asserted claims, the variable diameter hoses are not claimed? Well, I think that's relevant, Your Honor, in the idea that it's not part of the claim, it's not part of the claimed invention. If it's not part of the invention, then if I'm the inventor, how can I be concealing the best mode? It would be not relevant, because it's not the invention. That would seem right, Your Honor. It's outside the scope of the claim to do with these claims. But am I right that the variable size hoses were not within the scope of the claims, not in the plain language of the asserted claims? No. Not disclosed couldn't be claimed. Yeah. And not disclosed couldn't be claimed, weren't claimed, therefore by definition there couldn't be a best mode problem. That's correct. Anything further? I think I will rest on it. All right. I can't reserve it. You don't need it, because there's no cross-appeal. Counsel, on rebuttal, you have only 50 seconds left, but we'll add back two minutes if you need it, so you can respond to Mr. Schooley. Your Honor, very briefly, Mr. Schooley went back to the specification to justify his interpretation, the district court's interpretation of the claim. He surely did. Is that impermissible? I would submit yes, Your Honor. I thought in Phillips and many, many other cases we've emphasized that in doing a construction, a judge should look at the specification. Not may not, but should. Should look at the specification in order to properly understand the claim. But I would refer you back to White v. Dunbar, which I submit is the prevailing law of this land for over a century, 119 U.S. 47. And the Supreme Court said that a patent claim of a patent is not like a nose of wax, which may be turned and twisted in any direction. So as to make it include something more or something different from what its words express by merely referring to the specification. Well, that's certainly correct, but is that what's happening here? I think that's what is happening. How so? Going back to what the conduit is, what the side of the intercepted conduit is, you cannot have the connectors as part of the conduit, Your Honor. I'm going to the best mode. Why is that? Why are the connectors not part of the conduit when you're talking about a flow of fluid? For the reasons that I went over earlier, if you're talking about a road from A to B, it does not include A and B. The road is only the road. The fluid connector is only the connector. It is not the two apparatus at either end of the connector. How about a tunnel? When a road goes through the tunnel, it's still a road, isn't it? True, but at the end of the tunnel... Well, the connector is just like a tunnel. The road goes into the tunnel. A Lincoln Tunnel goes, or any tunnel goes, say, from Manhattan to Bronx. Manhattan and Bronx are not part of the tunnel. I agree with you on that. Anything further? Yes, on the best mode, Your Honor, the different adaptive hoses, if they are irrelevant to the claim, they were patented in the 170 patent by the patentee. And in our reply brief, we've addressed at length why it is very clear from the record that everybody in the court, including the witness and the person asking the questions, were aware that it's a 160 patent that was being referred to during the time when he was asked whether this was the best mode he knew for using his patented device. And there was a motion for new trial brought on this issue, never raised that this could have been referring to the 170 patent. All right. We thank both counsel, and we'll take the case under advisory. Thank you very much. Thank you.